## *In re* Ewing, Jr., Bankrupt.

*(Circuit Court, D. Indiana.* May 10, 1883.)

1. BANKRUPTCY—ASSIGNEE'S SALE—SUPERVISORY POWER OF THE COURTS.

Assignees' sales, being made under order of the court, must be regarded as judicial sales, and in the absence of anything unfair or wrong should be sustained by the court; the one whose rights should first be considered being the purchaser.

2. SAME—BANKRUPT LAW—AMENDMENT OF 1874.

The amendment to the bankrupt law of June 22, 1874, § 4, providing that the court, on the application of any party in interest, shall have complete supervisory power over sales, including the power to set aside the same and order a resale, so that the property sold shall realize the largest sum, was no more than a declaration of the power of the court over such sales, and was not intended to compel the court, in all cases where property had been sold at less than its value, to set it aside; this is a matter largely in the discretion of the court.

On Review from District Court.

*Mr. Anderson,* for Holladay.

*Mr. Bell,* for Bass.

DRUMMOND, J. The assignee, under the order of the district court, sold at auction, for cash, and to the highest bidder, Jesse Holladay, lot 5, in block 4, in Duncan's addition to Chicago. The sale was subject to the approval and confirmation of the district court.

A printed list of certain lots to be sold was given to various persons present at the sale, including lot 5, in block 4, and, among others, to John H. Bass, which contained an appraisement of the lots; that of lot 5, in block 4, being $5,750. Mr. Bass was present at the sale for the purpose of purchasing, and did buy one of the lots sold. According to his statement he kept his finger on the list of lots and their appraisement, and at the time of the bidding on lot 5 he made a mistake, as he alleges, as to the direction in which his finger was pointed, and supposed that the appraisement was $4,750, and under that impression, as he states, permitted the lot to be struck off to Mr. Holladay, who at the time paid $2,362.50, and took a certificate from the assignee to that effect, and after an examination of the title paid the balance of his bid on the twenty-ninth of November, 1882, and took a certificate from the assignee to that effect. The sum bid by him was $4,725. Shortly after payment of the purchase money the assignee reported the sale to the court, for its action thereon. Mr. Bass seems to have made no complaint at the time of the sale

v.16,no.7—48

or immediately thereafter, although at once informed of the true appraisement of the lot. It should be stated that the assignee did not announce the amount of the appraisement of each lot, although it was contained in the printed lists in the hands of many of the persons present, and of Mr. Bass, as already stated. On the sixth of December, 1882, Mr. Bass filed objections, in the form of a protest against the sale, claiming that the price paid for the property was inadequate, and on the hearing, on the second of February, 1883, the court decreed "that if the said Bass should pay to the assignee within 10 days the amount of Holladay's bid, with the sum of $1,000 in addition," then the sale was to be canceled, and the money refunded to Holladay; and thereupon the property was to be sold over again by the assignee, on due notice given; and in case Bass failed to make the payment, the assignee was to execute a deed to Holladay for the property. Holladay was allowed to become the purchaser by an increase of his bid. Bass accordingly did pay to the assignee the amount named. Holladay, the purchaser, filed his petition in review, asking for a reversal of the order of the district court, alleging that the sale to him was fair and open, with numerous bidders present, and that he is entitled to a deed for the property, on the bid and amount paid by him.

The amendment to the bankrupt law of June 22, 1874, § 4, provides: "The court, on the application of any party in interest, shall have complete supervisory power over such sales, including the power to set aside the same and to order a resale, so that the property sold shall realize the largest sum."

If this were an ordinary sale by a master, under a decree in chancery, there could be no doubt but that the sale to Holladay must stand, and the question is whether, because this is a bankrupt sale, and because of the language just quoted, a different rule shall prevail. Is the amendment of 1874 to the bankrupt law any more than a declaration of the power and duty of the court, independent of its enactment, or does it change the general rule applicable to such cases? John H. Bass is a large creditor of the bankrupt.

There are two things to be considered always in cases of this kind; one is the rights of the purchaser at the sale, and the other, the rights of the creditors. If the amount which has been paid at the sale is so disproportionate to the actual value of the property as to show that there must be something wrong or unfair connected with the purchase, then it is the duty of the court to set aside the sale;

but it, on the other hand, everything appears fair, and conducted in good faith on the part of the agent selling the property, and of the purchaser, although it may not have brought its actual value, the court should not set the sale aside.

This must be regarded as a judicial sale. It was made under the order of a court. It was subject to the action of the court for confirmation, or to set it aside, as the court should deem just and equitable. The amendment of 1874 to the bankrupt law seems to have been passed out of extreme caution, for the purpose of enabling the court to prevent the sacrifice of property at bankrupt sales; but, in fact, it was nothing more than a declaration of the power of the court over those sales which existed independent of that amendment; and it certainly could not have been intended to compel the court, in all cases where property had been sold at less than its value, to set it aside, because it expressly leaves the matter in the power of the court, and the question always is whether there has been a proper exercise of the discretion with which the court is clothed.

The ground upon which the objection rests in this case is, not that there was anything unfair in the conduct of the sale, nor that there was not ample competition at the sale, but that the property was worth more than was bid and paid, and that the objector made a mistake as to the appraised value of the property. But this appraisement had no immediate connection with the order of the court, and it does not appear that the fact of the appraisement was made known to the court at the time the order of sale was entered. It was a valuation growing out of the general settlement of the Ewing estate, connected with some chancery proceedings in this court, and the mistake was made by the objector himself, with all the means before him, if he had exercised reasonable attention to the list in his hand, of determining what the appraisement was.

I have already expressed my views upon the necessity of sustaining all judicial sales which are conducted fairly and in good faith, where the price bid is less than the value of the property,—*In re Third Nat. Bank*, 9 Biss. 535, [S. C. 4 FED. REP. 775,]—and I think there is nothing in the facts of this case to take it out of the rule there stated. It is more important that a sale such as was made here should be sustained by the court, than that it should be set aside simply because some one comes forward and offers more for the property than the amount bid by the purchaser, and therefore the decree entered in this case by the district court must be set aside, and the

assignee required to make the necessary deed to the purchaser; and, in view of the action of this court upon the petition of the purchaser, it would be nothing more than just that the objector should pay the costs in this court.